# United States Court of Appeals
## For the First Circuit

No. 08-2269

BRISTOL WEST INSURANCE COMPANY,

Plaintiff, Appellee,

v.

WAWANESA MUTUAL INSURANCE COMPANY,

Intervenor, Appellant,

MELANIE LANDRY; ROLLIN H. SMALL, JR.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Chief Judge,
Farris[*] and Howard, Circuit Judges.

Peter C. Felmly with whom Melissa A. Hewey and Drummond Woodsum & MacMahon were on brief for appellant.
Hans H.J. Pijls with whom Plunkett Cooney, P.C., James D. Poliquin, Norman, Hanson & DeTroy, LLC were on brief for appellee.

July 1, 2009

_____

[*]    Of the Ninth Circuit, sitting by designation.

**LYNCH**, **Chief Judge**.  Melanie Landry, a resident of Maine, was involved in a car accident in New Brunswick, Canada, on November 28, 2003 in which Keith Savoie, a resident of New Brunswick, was injured.  Landry was driving a vehicle owned by Rollin H. Small, Jr. when she hit Savoie's pickup truck, which was owned by Savoie's father, from the rear.

Landry was insured for the accident under a policy which was issued by Bristol West ("BW") for the six-month period from November 20, 2003 to May 20, 2004.  Savoie filed suit against Landry and Small in New Brunswick; BW handled the claim.  Savoie claimed injuries to his neck and back and sought damages in excess of $200,000 (Can.) for, inter alia, wage loss, loss of future income, medical costs, and pain and suffering.  Savoie also filed an action against Wawanesa Mutual Insurance Company, his insurer, seeking recovery for damages for what he might be unable to recover from Landry and Small.

BW brought this related declaratory judgment action against Landry and Small in federal court in Maine.  The purpose of the declaratory judgment suit, essentially, is to determine the extent of Landry's coverage under a particular clause in the BW policy in these circumstances.  Wawanesa was allowed to intervene. The two insurers filed cross motions for summary judgment.

BW's position is that its coverage is limited to the $50,000 maximum coverage specified in Landry's policy for in-state

accidents.  See Me. Rev. Stat. Ann. tit. 29-A, § 1605(1)(C)(2) (specifying $50,000 minimum coverage under Maine's compulsory insurance law for bodily injury).  Landry, Small, and Wawanesa take the position that BW's coverage obligation is for $200,000 (Can.) under an "Out of State Coverage" clause in the contract, because the accident occurred in New Brunswick.

The case thus presents a question of insurance contract interpretation.  That is an issue of law for a court under Maine law.  Foremost Ins. Co. v. Levesque, 868 A.2d 244, 246 (Me. 2005).  The district court resolved the case on cross motions for summary judgment.  Independently, for each of those reasons, our review is de novo.  See New Fed Mortg. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 543 F.3d 7, 11 (1st Cir. 2008); Liberty Mut. Ins. Co. v. Greenwich Ins. Co., 417 F.3d 193, 197 (1st Cir. 2005).

The district court made two holdings:  First, it held that the "Out of State" clause coverage language entitled Landry to out of state coverage only "to the extent required by a financial responsibility law to which the insured is subject."  Bristol West Ins. Co. v. Landry, 577 F. Supp. 2d 459, 464 (D. Me. 2008).  It then construed the New Brunswick financial responsibility statute and concluded Landry was not entitled to the extra coverage.  Id. at 465-66.  We disagree on the first point and have no need to reach the second.

I.

We begin with the plain language of the "Out of State Coverage" clause:

> If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:
>
> A.  If the state or province has:
>
> 1.  A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.
>
> 2.  A compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

New Brunswick has both a financial responsibility law and a compulsory insurance law, with identical $200,000 (Can.) limits. See R.S.N.B. 1973, ch. M-17, § 271. The parties agree that it is the financial responsibility provision which is at issue.

The courts of Maine would apply Maine law to the interpretation of the coverage provided in an automobile insurance policy for a resident of Maine. See Flaherty v. Allstate Ins. Co., 822 A.2d 1159, 1165-68 (Me. 2003) (explaining that under Maine law courts apply the "most significant contacts and relationships" test and applying Maine law where, inter alia, parties were Maine

-4-

residents and parties entered into insurance contract in Maine); see also Restatement (Second) of Conflict of Laws § 188 (1971).[1] Under Maine insurance law, there are certain well-accepted rules of construction of such contracts.

The ultimate touchstone of our analysis must be the parties' intent in entering their bargain. See, e.g., Pine Ridge Realty, Inc. v. Mass. Bay Ins. Co., 752 A.2d 595, 601 (Me. 2000). We view the policy from the standpoint of "an average person, untrained in either the law or the insurance field, in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." Peerless Ins. Co. v. Wood, 685 A.2d 1173, 1174 (Me. 1996). Additionally, "[i]nsurance policies are liberally construed by [the] court in favor of the insured." Id.; see also Found. for Blood Research v. St. Paul Marine & Fire Ins. Co., 730 A.2d 175, 180 (Me. 1999); Union Mut. Fire Ins. Co. v. Commercial Union Ins. Co., 521 A.2d 308, 310 (Me. 1987). Under Maine law, "[a]ny ambiguity in the [insurance] contract is resolved against the insurer." Union Mut. Fire Ins. Co., 521 A.2d at 310; see also Allstate Ins. Co. v. Elwell, 513 A.2d 269, 271 (Me. 1986).

Read literally, the Out of State Coverage clause states that it will provide coverage for an accident which occurs out of state up to the limits of liability provided for by a financial

---

[1] Although a complete copy of the BW policy was not submitted to the district court, all parties agreed that Maine law governed the case, and the district court accepted that agreement.

responsibility law of the place of the accident.  It is undisputed that New Brunswick, the place of the accident, has a financial responsibility law that requires nonresident motorists to satisfy a judgment of up to $200,000 (Can.), and to provide proof of financial responsibility in the amount of $200,000 (Can.), to avoid suspension of their driving privileges following an accident causing personal injury or $1000 (Can.) in damages.  See R.S.N.B. 1973, ch. M-17, §§ 276(1)(a), 282.  The contract provision's language, which was crafted by the insurer, then is easily understood to increase the coverage amount in this instance to $200,000 (Can.).

BW essentially argues that the provision should be read not as an expansion of coverage for the insured, but only as a potential expansion subject to a limitation.  The limitation BW wishes to read into the policy language is that the insured gets the benefit of the increased coverage amount if and only if New Brunswick's financial responsibility law would actually apply to these facts.  It argues that the New Brunswick law would not apply. Without our going into a long exegesis on the New Brunswick financial responsibility law, at the heart of BW's argument is that this was a first accident and under financial responsibility laws, as Couch on Insurance recognizes, usually the first accident is essentially free.  7A L.R. Russ & T.F. Segalla, Couch on Insurance § 109:34, at 109-47 (3d ed. 2005) ("The terms required by such

[financial responsibility] statutes apply only after the operator of a vehicle has been involved in one accident and only to accidents which occur after the effective date of the requirement of proof of financial responsibility."). We do not need to test the assumption that the New Brunswick law has that effect.

We think BW is wrong to focus on the limits of the New Brunswick financial responsibility law, and not on its own policy language. First, the Out of State Coverage clause does not read the way BW would like it to read, although it could have been written that way. Second, the proper focus is on the insured's reasonable expectations, given the policy language. We doubt any insured would have reasonably understood this "out of state coverage" clause to be not an expansion of coverage, as it says, but also to contain an unstated limitation on an expansion of coverage. Further, the insured certainly would not have understood the expansion of coverage to have an exception for first accidents outside of Maine in jurisdictions with financial responsibility laws. The language of the "Out of State Coverage" clause makes specific reference to any accident, whether first or not, out of state: the preamble to the financial responsibility clause states, "[i]f an auto accident to which this policy applies occurs" out of state, then "we will interpret your policy <u>for that accident</u> as follows"; the financial responsibility clause then promises to "provide the higher specified limit."

Our conclusion would be the same regardless, but it is buttressed by the fact that BW itself initially read the clause as we do and so represented to the insured. On September 13, 2007, two months prior to the filing of the complaint in the instant action, a BW Claims Analyst, Curtis M. Lemmerbrock, wrote a letter to Landry stating that "since this accident happened in Canada, your [bodily injury] policy limits automatically deem to the minimum amounts of liability limits as outlined via Canadian law, which is $200,000CA per person." The letter advised Landry that she would be covered up to the $200,000 (Can.) limit, but that damages from the injury claim pending against her could exceed that limit. Whether or not this is an admission, it is evidence BW's own agent read the clause that way. To the extent the clause is ambiguous, it must be read against the insurer.

The meaning of the clause is squarely presented and has not been waived. Wawanesa has argued both in the district court and on appeal that under the plain language of the policy the Out of State Coverage clause necessarily expands the coverage to $200,000 (Can.).[2] It is true that on appeal the parties largely viewed this case as a question about the meaning of the New Brunswick financial responsibility law. At oral argument, the

---

[2] In the district court, Wawanesa characterized the language of the clause as "clear and unambiguous" and argued that BW's clause included no words of limitation that the policy applied only after the first accident.

panel asked questions about interpretation of the Out of State Coverage clause.  And logically, the question we have answered is the prior one about the contractual language.  We have no need to reach the questions as to the meaning of New Brunswick law; we are particularly disinclined to opine on foreign law when we do not need to do so.  The principles of Maine law on which we rely are unexceptional and were briefed to the district court.

## II.

For these reasons, we reverse and order entry of judgment for Wawanesa.